**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MATTHEW BRACKEN,                              CASE NO.: 1:12-CV-892

                    Plaintiff,                Judge Michael R. Barrett

        v.

DASCO HOME MEDICAL EQUIPMENT,
INC., *et al.*,

                    Defendants.


## OPINION AND ORDER

        This matter is before the Court on Defendants Diversified Employment Solutions'

and Cornerstone Innovations Inc.'s Motion to Dismiss or Motion for Summary Judgment.

(Doc. 7).  Plaintiff Matthew Bracken has filed a response in opposition to the motion to

dismiss (Doc. 11),[1] and Defendants Diversified Employment Solutions and Cornerstone

Innovations Inc. have filed a reply (Doc. 13).  Plaintiff Matthew Bracken also has filed a

surreply.  (Doc. 17).[2]  The matter is now ripe for review.

**I.      BACKGROUND**

        The background facts construed in the light most favorable to Plaintiff Matthew

Bracken ("Bracken") are as follows:

---

[1]The response in opposition, however, is labeled as a motion under Fed. R. Civ. P. 56(d).

[2] Southern District of Ohio Civil Rule 7.2(a)(3) provides that no additional memorandum beyond a motion, response in opposition, and reply will be permitted except upon leave of court for good cause shown. Plaintiff did not seek leave of court to file his surreply.  However, in this instance, the Court will consider the surreply because there is some confusion over how the documents were filed.  Specifically, Plaintiff indicated that his response in opposition to Defendants' motion was a motion under Fed. R. Civ. P. 56(d), but it was docketed as a response in opposition to Defendants' motion.  If Plaintiff's filing had been docketed and construed as its own individual motion, Plaintiff would have been permitted to file a reply in support of that motion.

Bracken was employed as a Director of Operations by Defendant DASCO Home Medical Equipment, Inc. ("DASCO") and Defendant Diversified Employee Solutions, Inc. a/k/a Cornerstone Innovations, Inc. ("DES" and "Cornerstone") (Doc. 1, ¶¶ 1, 8). The business addresses of DES and Cornerstone are the same, and each entity has designated with the Ohio Secretary of State the same individual to serve as its statutory agent for service of legal process. (Doc. 1, ¶ 1). Bracken's 2011 W-2 identified Cornerstone as his employer. (Doc. 1, ¶ 2).

His immediate supervisor was Rachel Mazur, the Chief Executive Offer. (Doc. 1, ¶ 9). Mazur's brother, Jason Seeley, was President. (Doc. 1, ¶ 10). Mazur and Seeley owned DASCO. (Doc. 1, ¶ 11).

On or about November 25, 2009, Bracken entered into a Confidentiality and Noncompetition Agreement ("Agreement") with DASCO. (Doc. 7-1). The Agreement provides, in pertinent part:

> The Company would not have agreed to hire Associate but for and in reliance on Associate's agreements herein. . . .
>
> **§ 1. <u>Employment is At-Will.</u>** Associate's employment is at-will, which means it can be terminated at any time by either party, for any reason or for no reason at all, with or without advance notice. No provision of this Agreement is intended to alter the at-will nature of Associate's employment. . . .
>
> **§ 8. <u>Miscellaneous Provisions</u>.**
>
> (a) <u>Entire Agreement; Amendment.</u> This Agreement contains the entire agreement of the parties as to the subject matter hereof and merges and supersedes all prior discussions, agreements and undertakings between them. This Agreement may only be amended by a writing signed by the party who is to be bound thereby.
>
> (b) <u>Governing Law.</u> This Agreement shall be construed and enforced with Ohio law without regard to its conflicts of laws provisions. Any action brought by either the Company or

2

> Associate must be maintained in the state courts situated in Franklin County, Ohio.  The parties hereby consent to the jurisdiction of such courts.

(Doc. 7-1, §§ 1, 8(a)-(b)).  DASCO and Bracken are the only signatories to the Agreement.  (Doc. 7-1).

Bracken had a "disability," which he disclosed to Mazur, as well as to the Chief Financial Officer and the Director of Reimbursement, in October 2011.  (Doc. 1, ¶ 13). He was terminated on November 29, 2011.  (Doc. 1, ¶ 15).  Prior to his termination, Mazur and Seeley had expressed satisfaction with Bracken's performance, and had asked him to assume the Sales Manager position, to be the Joint Venture Sales Representative, and to continue in the position of Director of Operations.  (Doc. 1, ¶¶ 17-18).  DASCO and DES a/k/a Cornerstone allegedly denied him a reasonable accommodation and terminated him because of his disability.  (Doc. 1, ¶ 20).

On February 24, 2012, Bracken filed charges with the Equal Employment Opportunity Commission ("EEOC"), alleging that DASCO and DES a/k/a Cornerstone had denied him a reasonable accommodation and terminated his employment because of disability.  (Doc. 1, ¶ 22).  On or about August 21, 2012, the EEOC issued a notice of right to sue on each charge. (Doc. 1, ¶ 23).

On November 19, 2012, Bracken filed his Complaint in this Court, alleging disability discrimination under the American with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and Ohio Revised Code § 4112.99.  (Doc. 1, ¶¶ 25-28).

## II.    LEGAL STANDARDS

### A.  Motion to Dismiss

DES and Cornerstone's motion to dismiss is made pursuant to Federal Rules of Civil Procedure 12(b)(1)-(3) and 12(b)(6).

3

"A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). "A facial attack on the subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the pleading." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). "In reviewing such a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to dismiss." *Id.* On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). With a factual attack, this Court must "weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction exists or does not exist." *Ohio Nat'l Life Ins. Co.*, 922 F.3d at 325. The Court may allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts. *Id.*

Under Rule 12(b)(2), the plaintiff bears the burden of proving personal jurisdiction exists. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1261-62 (6th Cir. 1996). In the face of a supported motion to dismiss, the plaintiff may not rest on his pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). When the Court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing on the issue of

4

personal jurisdiction, however, the plaintiff "'need only make a *prima facie* showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (internal citation omitted)). The plaintiff can make this *prima facie* showing by "'establishing with reasonable particularity sufficient contacts between [the Defendant] and the forum state to support jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).

In deciding a Rule 12(b)(2) motion to dismiss, the Court is to construe the facts in the light most favorable to the non-moving party. *Id.* Significantly, the Court is not to weigh the controverting assertions of the party seeking dismissal. *CompuServe*, 89 F.3d at 1262 (citing *Theunissen*, 935 F.2d at 1459). This refusal to weigh the defendants' controverting assertions is necessary to prevent non-resident defendants from avoiding jurisdiction simply by filing an affidavit that denies all jurisdictional facts. *Id.*

Under Rule 12(b)(3), a case may be dismissed for improper venue. Fed. R. Civ. P. 12(b)(3). However, a motion to dismiss for improper venue pursuant to Rule 12(b)(3) will only be granted if the case was not filed in a venue prescribed by 28 U.S.C. § 1391. *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 536 (6th Cir. 2002).

Under Rule 12(b)(6), this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss[,] a complaint must contain (1) 'enough facts

5

to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 1974, 167 L. Ed. 2d 929 (2007)). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). However, the Court "'need not accept as true legal conclusions or unwarranted factual inferences.'" *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997) (quoting *Morgan v. Church's Fried Chicken*, 829 F.3d 10, 12 (6th Cir. 1987)).

## B. <u>Motion for Summary Judgment</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 1065 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is "material" only if its resolution affects the outcome of the suit. *Id.*

On summary judgment, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party

has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Once the moving party has met its burden of production, the nonmoving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential of that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

However, under Rule 56(d), if

> a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify the opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

## III. <u>ANALYSIS</u>

DES and Cornerstone move to dismiss Bracken's claims on three separate grounds. The Court will address each ground below.

### 1. <u>Forum Selection Clause</u>

DES and Cornerstone contend that the claims against them should be dismissed because the Forum Selection Clause in the Agreement between DASCO and Bracken

7

requires that the action be maintained in the state courts of Franklin County, Ohio.  (*See* Doc. 7-1).   The Court disagrees.

In the Sixth Circuit, it appears to be well-settled that courts have subject matter jurisdiction over a claim arising under a federal statute, even if a forum selection clause dictates that the litigation should have been filed in a different court.  *See Gibson v. Am. Bankers Ins. Co.*, 289 F.3d 943, 948 (6th Cir. 2002) ("[F]orum selection clauses in contracts do not deprive courts of jurisdiction"); *Godsey v. Miller*, 9 Fed. App'x 380, 383 (6th Cir. 2001) ("[T]he issue of a forum selection clause is an independent contractual concern created by the actions of the parties, and is not linked to the inherent subject-matter jurisdiction of the court."); *Nat'l Renal Alliance, LLC v. Gaia Healthcare Sys.*, No. 3:10-0872, 2010 U.S. Dist. LEXIS 119525, at *7 (M.D. Tenn. Nov. 9, 2010) ("While the authority to dismiss a case based upon a forum selection clause has been somewhat unsettled, it appears relatively clear in the Sixth Circuit that courts have subject matter jurisdiction, even if a forum selection clause dictates that the litigation should have been filed elsewhere.") (citing supporting caselaw).   As such, the Court finds it improper to dismiss under Rule 12(b)(1).

As for personal jurisdiction under Rule 12(b)(2), DES and Cornerstone make no argument that would indicate that the Court lacks personal jurisdiction over them.  The contractual choice of a forum does not deprive the Court of personal jurisdiction when such personal jurisdiction exists independent of the contract. *Overseas Ptrs., Inc. v. PROGEN Musavirlik ve Yonetim Hizmetleri, Ltd. Sikerti,* 15 F. Supp. 2d 47, 51, 55 (D.D.C.  1998) (personal jurisdiction over defendants established, but claims dismissed because of forum-selection clause);  *Lien Ho Hsing Steel Enterprise Co. v. Weihtag*, 738

F.2d 1455, 1460, 1462 (9th Cir. 1984) (affirming ruling of district court, which had dismissed suit based on forum-selection clause although requirements for in personam jurisdiction had been met); *Yazdani v. Access ATM*, No. 06-cv-1482 (D.C. App. 2008) ("A forum-selection clause does not deprive the court of personal jurisdiction."); *see also Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009) (analyzing how to properly address a forum selection clause); *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 369 (6th Cir. 2008) (same as *Wong*).

Finally, as to Rule 12(b)(3), the Sixth Circuit has stated unequivocally that "a forum selection clause should not be enforced through dismissal for improper venue under FRCP 12(b)(3) because these clauses do not deprive the court of proper venue." *Wong*, 589 F.3d at 830; *see also Kerobo*, 285 F.3d at 535-36 (discussing whether dismissal under Rule 12(b)(3) was proper in regards to a forum selection clause).

Instead, the Sixth Circuit has suggested that the proper mechanism for enforcing a forum selection clause that mandates jurisdiction in a state court is a motion to dismiss to enforce the clause premised on Rule 12(b)(6) or on the doctrine of *forum non conveniens*. *Wong*, 589 F.3d at 824, 830 (denying the defendants' Rule 12(b)(3) motion to dismiss based on a forum selection clause, and instead, dismissing the action *sua sponte* on *forum non conveniens* grounds); *Langley*, 546 F.3d at 366 (reversing and remanding dismissal based on an invalidity of contracts that contained forum selection clauses requiring suit in New York state or federal court, and directing the district court "to entertain a motion to enforce the forum selection clause under Fed. R. Civ. P. 12(b)(6) or 28 U.S.C. § 1404(a)");[3] *Stepniewski v. Ticketmaster Entm't, LLC*, No. 3:10-

---

[3] Although *Langley* provides for a motion to transfer venue under 28 U.S.C. § 1404(a), DES and Cornerstone do not move for a transfer under that section. That is not surprising since in "'cases in which

cv-00760, 2010 U.S. Dist. LEXIS 109385 (M.D. Tenn. Oct. 13, 2010) (analyzing *Wong* and *Langley*, and concluding that in light of those cases, "when a forum selection clause mandates exclusive jurisdiction in a state court, a motion to dismiss to enforce the clause may be premised either on Rule 12(b)(6) or on the *forum non conveniens* doctrine"). On a motion pursuant to Rule 12(b)(6), "the court only needs to determine whether the forum selection clause is enforceable and applicable; if it is, then the suit should be dismissed." *Stepniewski*, 2010 U.S. Dist. LEXIS 109385, at *12 (citing *Langley*, 546 F.3d at 366; *Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 375-76 (6th Cir. 1999)). Since DES and Cornerstone have not submitted evidence or argument on the convenience of the forum, it would be more appropriate to treat the pending motion as one brought pursuant to Rule 12(b)(6). *See Stepniewski*, 2010 U.S. Dist. LEXIS 109385, at *12 (construing argument as to forum selection clause as a motion to dismiss); *Regions Bank v. Wyndham Hotel Mgmt., Inc.*, No. 3:09-1054, 2010 U.S. Dist. LEXIS 23371, at *24 (M.D. Tenn. Mar. 11, 2010) (declining to undertake a *forum non conveniens* analysis because the plaintiff failed to "put forth any of the typical proof regarding inconvenience and the desirability of the proposed forum versus the current forum that courts usually weigh [in deciding the enforceability of the clause].").

Nevertheless, where materials outside the pleadings are offered to accompany a motion to dismiss, the Court has two options. *Cincinnati Ins. Co. v. Hertz Corp.* 776 F. Supp. 1235, 1238 (S.D. Ohio 1991) (citing *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.

---

a forum selection clause makes a particular state court, or a foreign court, the exclusive forum, there is no federal court to which transfer may be ordered to give effect to the forum selection clause under Section 1404(a).'" *Stepniewski v. Ticketmaster Entm't, LLC*, No. 3:10-cv-00760, 2010 U.S. Dist. LEXIS 109385, at *7 (M.D. Tenn. Oct. 13, 2010) (quoting 17 Moore's Federal Practice - Civil § 111.04[3][a] (3d ed. 2010) (citing *Instrumentation Assocs., Inc. v. Madsen Elecs. (Canada), Ltd.*, 859 F.2d 4, 6-7 (3d Cir. 1988))); *see also Langley*, 546 F.3d at 371 n.2 (Moore, J., concurring) ("[I]f transfer is not possible because a valid forum-selection clause mandates venue in state court or a foreign jurisdiction, § 1404(a) does not apply.").

Ct. 1232, 31 L. Ed. 2d 569 (1972)).  First, the Court may exclude the additional material and decide the motion based upon the complaint alone.  *Id.* (citing *Kopec v. Coughlin*, 922 F.2d 152, 154 (2nd Cir.1991)); *see also* Fed. R. Civ. P. 12(d).  Second, the Court may treat the motion to dismiss as a motion for summary judgment and rule upon the motion as provided in Rule 56.  *Id.* (citing *Carter*, 405 U.S. at 671; *Rose v. Bartle*, 871 F.2d 331, 340 (3rd Cir.1989)).  If matters outside the complaint are considered by the Court in ruling on a motion to dismiss, then the motion must be considered as one for summary judgment.  *Id.* (citing *Sims v. Mercy Hospital of Monroe*, 451 F.2d 171 (6th Cir.1971)).  When the Court converts a motion to dismiss into a motion for summary judgment, it must provide all parties with a "reasonable opportunity to present all material that is pertinent to its motion." Fed. R. Civ. P. 12(d).  If the plaintiff shows "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition,"  the Court has the discretion to "(1) defer considering the motion or deny it;  (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Here, the forum selection clause is part of an Agreement that is attached to the motion of DES and Cornerstone but not to the Complaint.  While Bracken refers to his position and employment by DASCO in the Complaint, he does not expressly reference the Agreement and his claims are not specifically predicated upon that Agreement.  However, regardless of whether the motion should be considered under Rule 12(b)(6) or Rule 56, the Court finds it appropriate to consider the submitted Agreement in ruling on the issue because the language of the Agreement alone is determinative of the

applicability of the forum selection clause to this matter. *See Weiner v. Klais and Co., Inc.*, 108 F.3d 89, 89 (6th Cir. 1997) (citations omitted).

In interpreting the Agreement, the Court will apply Ohio law, which is the law of the jurisdiction selected by the parties in the Agreement. *See Enquip Techs. Group Inc. v. Tycon Technoglass S.R.I.*, 986 N.E.2d 469, 479 (Ohio App. 2012) (concluding that the parties' choice of law should be used to interpret their forum-selection clause). The goal of contract interpretation is to ascertain and effectuate the parties' intent. *Graham v. Drydock Coal Co.*, 667 N.E.2d 949, 952 (Ohio 1996). The parties' intent is evidenced by the contractual language employed. *Id.*; *see also Saunders v. Mortensen*, 801 N.E.2d 452, 454 (Ohio 2004). When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether an ambiguity exists. *Id.*; *see also Buckeye Corrugated, Inc. v. DeRycke*, No. 21459, 2003 Ohio App. LEXIS 5703, at *12 (Ohio App. Nov. 26, 2003). If the contract terms are clear and precise, then the contract is not ambiguous and must be enforced as written. *Id.* Nor does ambiguity exist if the subject language's meaning can be determined by considering the language in the context of other contractual language. *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 764 (6th Cir. 2008) ("In determining whether contractual language is ambiguous, the contract 'must be construed as a whole.") (internal quotations omitted); *Saunders*, 801 N.E.2d at 455 ("[A] contract is to be read as a whole and the intent of each part gathered from a consideration of the whole."). The intended meaning of a word or phrase may be clear when that word or phrase is considered in the context of other words or phrases in the contract. *See* 18 Ohio Jurisprudence 3d, Contracts, Section 123 (2012) ("A term that

12

would otherwise cause ambiguity can be construed in the context of other terms in the contract to resolve the ambiguity.") (citing *Seringetti Const. Co. v. City of Cincinnati*, 553 N.E.2d 1371 (Ohio App. 1988)).

However, "[c]ontractual language is ambiguous . . . where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations.'" *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 763 (6th Cir.2008) (quoting *Covington v. Lucia*, 784 N.E.2d 186 (Ohio App. 2003)). Before resorting to extrinsic evidence, the Court may resolve ambiguities by construing the language against the drafter. *Savedoff*, 524 F.3d at 764 (citing *Central Realty Co. v. Clutter*, 406 N.E.2d 515, 517 (Ohio 1980); *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 798 (6th Cir. 2003) (applying Ohio law)).

Here, the primary focus of the jurisdictional argument is on Section 8(b) of the Agreement, which provides:

> (b) <u>Governing Law.</u>  This Agreement shall be construed and enforced in accordance with Ohio law without regard to its conflicts of laws provisions.  Any action brought by either the Company or Associate must be maintained in the state courts situated in Franklin County, Ohio.  The parties hereby consent to the jurisdiction of such court.

(Doc. 7-1, §§ 1, 8(b)).  DES and Cornerstone contend that the plain language shows that Bracken consented to jurisdiction in Franklin County, Ohio state courts for "any action," including the present discrimination claims against DES and Cornerstone. Bracken disagrees, arguing that the forum selection clause applies to Bracken's contractual obligations to keep information confidential, to refrain from competing against DASCO, to refrain from soliciting DASCO business and employees, and to provide DASCO with the appropriate remedies in the event of a breach.  He contends

that the forum selection clause, when viewed in light of the entire Agreement, was not intended to apply to his claims based on federal and state discrimination laws, or to any actions against DES or Cornerstone.

The Court agrees with Bracken.  Viewing the forum selection clause in isolation, it could be construed to apply broadly to any action that Bracken brought regardless of whether it arose from the Agreement or against a party that was not a signatory to the Agreement.  However, when the clause is viewed as part of the whole Agreement, the plain intent was to govern the confidentiality and non-compete issues as to DASCO, and not to govern Bracken's entire employment relationship with DASCO, DES, and/or Cornerstone.

As an initial matter, Section 8(c) provides that the Agreement "is not intended to confer any rights upon any person not a party to this Agreement."  (Doc. 7-1, § 8(c)).  Neither DES nor Cornerstone is mentioned in the Agreement, and neither is a signatory to the Agreement.  (*See* Doc. 7-1).  DES and Cornerstone provide no explanation as to why the Agreement applies to them despite the plain language of the Agreement.  As such, the Court cannot find that the Forum Selection Clause in the Agreement deprives Bracken of his choice of forum in this Court.

Even if the Agreement applied to DES and Cornerstone, the Court would still find the forum selection clause inapplicable to Bracken's claims in this case.  The language construed as a whole evidences an intent to limit the forum selection clause to matters related to the Agreement.  The Court first considers the sentence in Section 8(b) that immediately precedes the forum selection clause.  That sentence requires the application of Ohio law to *the Agreement*.  (Doc. 7-1, § 8(b)).  The forum selection

14

clause then provides for jurisdiction in Ohio state courts.  (*Id.*)  Not only does the first sentence provide context for the second sentence, but interpreting the Agreement in accordance with Ohio law also is consistent with subjecting oneself to jurisdiction in Ohio state courts for matters arising from that Agreement.

The Court next considers that the parties agreed that the Agreement is the "entire agreement of the parties as to the *subject matter* hereof."  (Doc. 7-1, § 8(a)) (emphasis added).  The Agreement does not include language suggesting that the contract is intended to govern other aspects of Bracken's employment, and it does not incorporate by reference any other agreements or documents governing any other subject matter from which the Court could infer an intent to broadly apply the forum selection clause to all aspects of Bracken's employment.

Although the Court recognizes that the drafter could have chosen to draft the forum selection clause to reference the "Agreement," as was done throughout the Agreement, if the intent was to limit its scope, the remainder of the Agreement provides that limitation.  Importantly, if the drafter intended to expand the scope of the forum selection clause, then it could have chosen to include language specifying its intent to do so.  For example, the drafter could have specified that: "Any Agreement arising of the subject matter of this Agreement or out of Associate's employment generally whether or not specifically related to this Agreement, shall be maintained in the state courts situated in Franklin County, Ohio."  The drafter did not do so.  As such, the Court finds that the intent of the parties based on the plain language of the Agreement was to limit the scope of the forum selection clause to the matters concerning the Agreement.

Bracken's current claims under the ADA and Ohio anti-discrimination statute do not fall within the scope of the Agreement. The primary focus of the Agreement is confidentiality and noncompetition, as evidenced by the title of the Agreement and the multiple provisions in the Agreement devoted to those issues. Bracken's claims clearly do not challenge the confidentiality or noncompetition issues. As for the single provision in the Agreement indicating that his employment is "at-will," that provision serves to reinforce that the Agreement does not change his at-will employment status. It does not provide him with any additional protections in his employment nor does it purport to address his employment rights generally. Moreover, Bracken does not seek to challenge his at-will employment status nor does he appear to argue that he could not be terminated at any time. He also does not challenge whether the Agreement altered his at-will employment status. Instead, Bracken challenges whether DES and Cornerstone afforded him the legal protections to which he is entitled under federal and state statutes, regardless of his at-will employment status. There is nothing in the Agreement that suggests any intent to govern such rights of an employee.

Having considered the language of the Agreement as a whole, the Court finds that the intent of the parties was not to reach beyond the scope of the Agreement to subject Bracken's employment discrimination claims against DES and Cornerstone to the forum selection clause. The Agreement is not between Bracken and DES or Cornerstone, it is limited to the subject matter set forth therein, and it does not touch on any of Bracken's federal or state statutory employment rights. As such, the Court concludes that the forum selection clause is inapplicable and unenforceable in this

matter.  DES and Cornerstone's motion to dismiss, or motion for summary judgment, based on the forum selection clause is therefore denied.

### 2.  "Employer" Status of DES and Cornerstone

DES and Cornerstone next move for dismissal based on their allegations that they were not Bracken's employer, either jointly or severally.  In support of their argument, they first contend that the Agreement was on DASCO letterhead and was between DASCO and Bracken, not DES or Cornerstone.  Second, they contend that DASCO hired Bracken, as evidenced by the affidavit of Mazur attached to the motion. Third, they contend that DASCO handled Bracken's behavioral problems.  They also attach a "Service Agreement" that purports to be between DASCO and Capital Dimensions, Inc.  (Doc. 7-4).  That Service Agreement confers "co-employer" status on DASCO and Capital Dimensions, but DES and Cornerstone argue that Cornerstone was only tasked with a human resources role.  (*Id.*).

In order to hold DES and Cornerstone liable under the ADA, Bracken must show that DES and Cornerstone were his "employers" within the meaning of that statute. Although a direct employment relationship provides the usual basis for liability under the ADA, "courts have fashioned various doctrines by which a defendant that does not directly employ a plaintiff may still be considered an 'employer' under those statutes." *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 993 (6th Cir. 1997).  One approach is to examine whether two entities are so interrelated that they may be considered a "single employer" or an "'integrated enterprise."  *Id.* (citing *York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir. 1982)).  A second approach is to consider "whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a 'joint employer' of those

17

employees." *Id.* (citing *Carrier Corp. v. NLRB*, 768 F.2d 778 (6th Cir. 1985); *Rivas v. Federacion de Asociacions Pecurias de Puerto Rico*, 929 F.2d 814 (1st Cir. 1991)).  A third approach is to examine "whether the person or entity that took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer." *Id.* (citing *Deal v. State Farm County Mut. Ins. Co. of Texas*, 5 F.3d 117 (5th Cir. 1993); *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722 (N.D. Ala.), *aff'd*, 664 F.2d 295 (11th Cir. 1981)).

Here, Bracken appears to be advocating for the "single employer" approach as to DES and Cornerstone, and for the "joint employer" approach for DASCO and DES/Cornerstone.  Although the parties attach additional materials to the briefings relating to this issue, the Court is unclear as to the relevance of most of the additional materials submitted with the briefings, and finds that discovery should proceed before such materials are considered.  For example, the Service Agreement attached by DES and Cornerstone (Doc. 7-4) is not mentioned in the Complaint, and there is nothing therein that indicates how it is relevant or central to the allegations in the Complaint. The Service Agreement is between DASCO and Capital Dimensions, Inc.  (Doc. 7-4). Capital Dimensions, Inc. is not a party to this lawsuit, and DES and Cornerstone have not explained why the Court should consider it as relevant to the claims against them. Likewise, the information about Bracken's alleged performance issues is not mentioned in Complaint or central to Bracken's claims at this early stage.  While it may be relevant to DES's and Cornerstone's defenses in this matter, the information provided is one-sided and self-serving.  To consider those materials now would preclude Bracken from obtaining discovery necessary to oppose it in accordance with Rule 12(d) and Rule

56(d). Nor is the Confidential Separation and Release Agreement attached by Bracken incorporated in the pleadings and central to his claims at this early stage, and its relevance to this matter is unclear at this time. (*See* Doc. 11-1, p. 4). As such, those additional materials will be excluded, and the Court will consider only on the allegations set forth in the Complaint pursuant to Rule 12(b)(6). *Kopec*, 922 F.2d at 154; *see also* Fed. R. Civ. P. 12(d). [4]

The "single employer analysis involves examining various factors to determine if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise." *Swallow*s, 128 F.3d at 993; *see also Sanford v. Main St. Baptist Church Manor, Inc.,* 449 Fed. App'x 488, 491 (6th Cir. 2011). To determine whether to treat two entities as a single employer, the Court should examine the following four factors: "(1) interrelation of operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Id.* at 993-94 (citing *York v. Tennessee Crushed Stone Assoc.*, 684 F.2d 360, 632 (6th Cir. 1982)). "None of these factors is conclusive, and all four need not be met in every case." *Id.* (citing *Armbruster v. Quinn*, 711 F.2d 1332, 1337-38 (6th Cir. 1983)). Here, although DES and Cornerstone state in the motion that they are separate entities, Bracken has alleged at this early stage of the litigation sufficient facts from which the Court can find, when construing those facts in Bracken's favor, it plausible that DES and Cornerstone were a

---

[4] Even if the Court considered those materials under Rule 56, it still would not dismiss the case at this early stage of the proceedings based on those materials. The attached materials raise more questions than answers about DASCO's relationship with DES and Cornerstone, such that summary judgment on those materials alone and without the parties conducting additional discovery would be improper. *See* Fed. R. 12(d), 56(a)-(d).

single integrated employer that are separated only nominally. Specifically, the Complaint alleges that the two entities have the same business address and the same statutory agent. Additional facts may be discovered through the discovery process. As such, the Court declines to dismiss either DES or Cornerstone on the basis that they are not a single employer.

As to whether DES/Cornerstone and DASCO are "joint employers", the Court must consider whether "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Swallows*, 128 F.3d at 993 (quoting *NLRB v. Browning-Ferris Industries, Inc.*, 691 F.2d 1123 (3d Cir. 1982)). "Thus, the 'joint employer' concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment." *Id.* "The major factors in this determination are the ability to hire, fire, and discipline, affect compensation and benefits, and direct and supervise performance." *Sanford v. Main St. Baptist Church Manor, Inc.,* 449 Fed. App'x 488, 492 (6th Cir. 2011).

Construing the facts in favor of Bracken, the Court finds that he has plausibly alleged that DES/Cornerstone and DASCO were joint employers. There is no dispute that DASCO employed Bracken. Bracken has also alleged that Cornerstone was identified as his employer on his W-2. (Doc. 1, ¶ 1). Although he has not provided specifics as to the control that DES/Cornerstone had over his conditions of employment, the Court finds that the allegations construed in Bracken's favor state a claim for relief that is plausible on its face as they suggest that Cornerstone/DES could have had

20

control, at a minimum, over his compensation or related benefits. The extent of their control is a fact-specific inquiry that will be better addressed after discovery on the issue has occurred.

Given the similarity of the language used in the ADA and Chapter 4112, the Ohio Supreme Court has held that federal regulations and caselaw are applicable to disability discrimination claims brought under Chapter 4112. *Columbus Civil Serv. Comm. v. McGlone*, 697 N.E.2d 204, 206-07 (Ohio 1998). As Bracken has sufficiently alleged that DES and Cornerstone were employers under the ADA, the Court finds that his allegations are likewise sufficient under Ohio Revised Code § 4112.

Accordingly, the Court declines to dismiss either DES or Cornerstone at this stage of the litigation on the basis that they were not Bracken's employer.

### 3. **The ADA and Ohio Revised Code § 4112**

DES and Cornerstone move to dismiss Bracken's claims under the ADA and Ohio Revised Code § 4112 pursuant to Federal Rule of Civil Procedure 12(b)(6) or Federal Rule of Civil Procedure 56. They contend that the undisputed evidence presented shows that Bracken was terminated because of his poor performance rather than because of any alleged disability. DES and Cornerstone attach supporting evidence to its Motion.

As stated above, when materials outside the pleadings are offered to accompany a motion to dismiss, the Court may exclude the additional evidence and decide the motion on the complaint alone, or it may consider the additional evidence and treat it as a motion for summary judgment under Rule 56. *Cincinnati Ins. Co.*, 776 F. Supp. at 1238 (citing *Carter v*, 405 U.S. at 671). Here, the Court does not find it necessary to convert the motion to dismiss into one for summary judgment. As such, the additional

21

materials presented by the parties are excluded, and the Court will decide the motion based on the allegations in the Complaint alone.

To make out a *prima facie* case of employment discrimination through indirect evidence under Title I of the ADA, a plaintiff must show that (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of the plaintiff's disability; and (5) the position remained open while the employer sought other applicants or the disabled individual was replaced.  *Whitfield v. Tennessee*, 639 F.3d 253, 258-59 (6th Cir. 2011) (citing *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)).

The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (1) (A)-(C).  The ADA provides that major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

DES and Cornerstone argue that Bracken has not adequately alleged that he was disabled or regarded as disabled, noting that he does not allege that he is substantially limited in one or more major life activities, that there was a record of such an impairment, or that he was regarded as having such an impairment.  (Doc. 7, pp. 2, 8).  Bracken responds that DES and Cornerstone have not challenged the sufficiency of his pleadings under Rule 12(b)(6), as it mentions Rule 12(b)(6) but devotes its entire

memorandum to arguing "evidence." (Doc. 11, p. 2). He argues that DES and Cornerstone have not explained how Bracken failed to satisfy Federal Rule of Civil Procedure 8(a) "short and plain statement pleading standard" much less cite any caselaw supporting such an explanation. (*Id.* at 2-3)

While recognizing that DES and Cornerstone's argument primarily focused on arguing for summary judgment based on Bracken's termination for alleged performance deficiencies, the Court nevertheless finds it appropriate to address the sufficiency of the allegations under Rule 12(b)(6) given that DES and Cornerstone also argued for dismissal under Rule 12(b)(6) and referenced the insufficient allegations in its motion and its reply (*see* Doc. 7, pp. 1, 9; Doc. 13, pp. 4-5).

In *Sutton v. United Air Lines, Inc.*, the Supreme Court upheld the dismissal of the plaintiffs' ADA claims for failure to state a claim upon which relief can be granted because the plaintiffs failed to adequately allege that they were limited in the major life activity of working. 527 U.S. 471, 488-89, 119 S. Ct. 2139, 144 L. Ed. 2d 450 (1999). The Court explained: "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Id.* at 491.

Accordingly, courts have found that the failure to allege any substantial limitations in a major life activity is grounds for dismissal. *See, e.g., Davis v. CEVA Logistics*, No. 1:12-cv-351, 2013 U.S. Dist. LEXIS 15964, at *5-8 (S.D. Ohio Feb. 5, 2013) (dismissing ADA under Rule 12(b)(6) for failure to specify what major life activities have been, or were perceived to have been, affected by the alleged disability); *Johnson v. Fresh Mark, Inc.*, 337 F. Supp. 2d 996, 1001 (N.D. Ohio 2003), *aff'd*, 98 Fed. App'x

461 (6th Cir. 2004) (failure to state ADA claim where plaintiff failed to specify what major life activities have been affected by her condition); *Jones v. STOA Int'l/Florida, Inc.*, 422 Fed. App'x 851, 853 (11th Cir. 2011)  (failure to state ADA claim where plaintiff did not allege how, aside from missing work for several days, any major life activity was impaired or perceived to be impaired by her staph infection, or that she suffered or was regarded as suffering from any long-term impacts); *Lopez Hernandez v. Municipality of San Juan*, 206 F. Supp. 2d 243, 250 (D.P.R. 2002) (failure to state ADA claim where plaintiff failed to identify pivotal life activity and whether that life activity is considered a major life activity under the ADA). Similarly, in reviewing "regarded as" claims for a failure to state a claim, courts have required that a plaintiff allege which major life activity the employer regarded as impaired. *See, e.g., Davis v. CEVA Logistics*, 2013 U.S. Dist. LEXIS 15964, at *7-8 ("regarded as" claims dismissed under Rule 12(b)(6) for failure to specify what major life activity the employer perceived to be impaired); *Kaiser v. Banc of Am. Inv. Services, Inc.*, 296 F. Supp. 2d 1219, 1221-22 (D. Nev. 2003) (citing *Mattice v. Mem'l Hosp. of South Bend, Inc.*, 249 F.3d 682, 685 (7th Cir. 2001) (explaining in dicta that if a claim is based on the impairment of the major life activity of working, then *Sutton* requires plaintiffs to plead that they are perceived as unable to work in a broad class of jobs)).

Here, Bracken merely alleges that he "disclosed his 'disability'" to DASCO's upper management in October 2011, and "shortly after Plaintiff disclosed his 'disability'", Mazur "notified him of the termination of his employment."  (Doc. 1, ¶¶ 13-15).  He has not made any allegations as to the major life activity in which he was limited or perceived to be limited.  Even if the Court were to infer that Bracken intended to allege

that he was substantially limited, or perceived to be substantially limited, in the major life activity of working, he still has not alleged that the was unable to work in a broad class of jobs or that he was perceived as unable to work in a broad class of jobs.  Therefore, Bracken has not alleged a plausible claim for disability discrimination under the ADA, and that claim is hereby dismissed.

Given that the federal regulations and caselaw are applicable to disability discrimination claims brought under Chapter 4112, *see Columbus Civil Serv. Comm.*, 697 N.E.2d at 206-07, the Court finds that Bracken has failed for the reasons explained above to adequately allege that he was substantially limited in a major life activity or perceived as substantially limited in a major life activity.  Accordingly, his claim for disability discrimination under Ohio Revised Code § 4112 also must be dismissed.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, DES and Cornerstone's Motion to Dismiss or Motion for Summary Judgment (Doc. 7) is **DENIED IN PART** and **GRANTED IN PART**. Specifically, it is **ORDERED** that:

1.  DES and Cornerstone's motion to dismiss, or for summary judgment on, Bracken's disability discrimination claims under the ADA and Ohio Revised Code § 4112 on the basis of the forum selection clause is DENIED.

2.  DES and Cornerstone's motion to dismiss, or for summary judgment on, Bracken's disability discrimination claims under the ADA and Ohio Revised Code § 4112 on the ground that it was not Bracken's employer is DENIED.

3.  DES and Cornerstone's motion to dismiss Bracken's disability discrimination claims under the ADA and Ohio Revised Code § 4112 pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED.

4.  DES and Cornerstone's motion for summary judgment on Bracken's disability discrimination claims under the ADA and Ohio Revised Code § 4112 pursuant to Federal Rule of Civil Procedure 56 is DENIED AS MOOT.

As no other claims remain pending in this matter against DES or Cornerstone, the Clerk is directed to **TERMINATE** DES and Cornerstone as Defendants.  Moreover, since no other claims remain pending in this case in light of this Opinion and Order and the Court's prior Opinion and Order concerning DASCO, the Clerk is directed to **CLOSE** and **TERMINATE** this matter from the docket of this Court.

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court